UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-61325-Civ-SCOLA
(12-60294-Cr-SCOLA)
MAGISTRATE JUDGE PATRICK A. WHITE

GREGORY RICHARDSON,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

**REPORT OF MAGISTRATE JUDGE**

## I. Introduction

The movant, a federal prisoner, currently confined at the Edgefield Federal Correctional Institution in Edgefield, South Carolina, has filed this §2255 motion challenging his conviction and sentence entered following a guilty plea in case no. **12-60294-Cr-Scola**. He seeks relief in light of the Supreme Court's ruling in Johnson v. United States, ___ U.S. ____, 135 S.Ct. 2551 (2015) (hereinafter, "Samuel Johnson"), made retroactively applicable to cases on collateral review by Welch v. United States, 578 U.S. ____, 136 S.Ct. 1257, ____, L.Ed.2d ___ (2016).

This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges, S.D. Fla. Admin. Order 2003-19; and, Rules 8 and 10 Governing §2255 Cases in the United States District Courts.

Presently before the court is the Petitioner's motion to vacate (Cv DE# 1, 4, 8), the government's response in opposition (Cv-DE# 9), and Petitioner's reply thereto (Cv DE# 12).

## II. Claims

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 519 (1972), the movant argues that his conviction for possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §924(c) is no longer lawful in light of Samuel Johnson v. United States, 135 S.Ct. 2551 (2015) which the United States Supreme Court held to apply retroactively to cases on collateral review in Welch v. United States, 136 S.Ct. 1257 (2016).

## III. Procedural History

On February 1, 2013, a grand jury sitting in the Southern District of Florida entered a nine-count superseding indictment charging Petitioner with four counts of bank robbery, in violation of 18 U.S.C. §2113(a) (Hobbs Act robbery) (Counts 1, 4, 6, and 8); one count of attempted bank robbery, in violation of 18 U.S.C. §2113(a) (Count 3); and four counts of possession of a firearm in furtherance of a crime of violence, namely, Hobbs Act robbery, in violation of 18 U.S.C. §924(c) (Count 2, 5, 7, and 9) (DE CR# 52).

On July 24, 2013, Petitioner plead guilty to four counts of bank robbery, one count of attempted bank robbery, and one count of possession of a firearm in furtherance of a crime of violence (CR DE# 119). In accordance with the terms of the plea agreement, the government agreed to dismiss Counts 5, 7 and 9 at the time of sentencing. (Id.).

Prior to sentencing, a PSI was prepared which reveals as follows. The offense level computation section of the PSI separated the charges into five groups which each related to a different robbery.

Group 1: Regent Bank Robbery. The base offense level was set at 20 because the offense involved robbery, §2B3.1(a). (PSI ¶27). Pursuant to §2B3.1(b)(1), since the property of a financial institution was taken, the base offense level was increased by two levels. (PSI ¶28). Because the loss was more than $10,000 but not more than $50,000, the offense level was increased one level(s), §2B3.1(b)(7)(B). (PSI ¶29).

Group 2: Desjardins Attempted Bank Robbery. The base offense level was set at 20 because the offense involved robbery, §2B3.1(a). (PSI ¶34). Pursuant to §2B3.1(b)(1), since the property of a financial institution was taken, the base offense level was increased by two levels. (PSI ¶35).

Group 3: Banco Popular Robbery. The base offense level was set at 20 because the offense involved robbery, §2B3.1(a). (PSI ¶40). Pursuant to §2B3.1(b)(1), since the property of a financial institution was taken, the base offense level was increased by two levels. (PSI ¶41). Because a firearm was otherwise used, the offense level was increased six levels, §2B3.1(b)(2)(B). (PSI ¶42). Because the loss was more than $10,000 but not more than $50,000, the offense level was increased one level(s), §2B3.1(b)(7)(B). (PSI ¶29).

Group 4: City County Credit Union Robbery. The base offense level was set at 20 because the offense involved robbery, §2B3.1(a). (PSI ¶48). Pursuant to §2B3.1(b)(1), since the property of a financial institution was taken, the base offense level was increased by two levels. (PSI ¶49). Because a firearm was otherwise used, the offense level was increased six levels, §2B3.1(b)(2)(B). (PSI ¶50). Because the loss was more than $10,000 but not more than $50,000, the offense level was increased one level(s), §2B3.1(b)(7)(B). (PSI ¶51).

Group 4: Sun Trust Bank Robbery. The base offense level was set at 20 because the offense involved robbery, §2B3.1(a). (PSI ¶56). Pursuant to §2B3.1(b)(1), since the property of a financial institution was taken, the base offense level was increased by two levels. (PSI ¶57). Because a firearm was otherwise used, the offense level was increased six levels, §2B3.1(b)(2)(B). (PSI ¶58). Because the loss was more than $10,000 but not more than $50,000, the offense level was increased one level(s), §2B3.1(b)(7)(B). (PSI ¶59).

The combined adjusted offense level was set at 33. (PSI ¶72). The PSI did not include any chapter four enhancements. See (PSI ¶73). The levels were deducted based on Petitioner's acceptance of responsibility. (PSI ¶74-75). The total offense level was set at 30. (PSI ¶76).

The PSI next determined that the movant had nine criminal history points and a criminal history category of IV. (PSI ¶92).

Statutorily, as to each of Counts One, Three, Four, Six, and Eight, the term of imprisonment was 0 to 20 years, 18 U.S.C. §2113(a); as to Count Two, a minimum term of imprisonment of seven years under 18 U.S.C. §924(c)(1)(A)(ii),(D)(ii) was to run consecutively to any other term of imprisonment. (PSI ¶142). Based on a total offense level of 30 and a criminal history category of IV, the guideline imprisonment range was 135 to 168 months. As to Count Two, a term of imprisonment of not less than seven years under 18 U.S.C. §924(c)(1)(A)(ii),(D)(ii) was to run consecutively to any other term of imprisonment, §5G1.2(a).(PSI ¶143).

On October 16, 2013, the Court sentenced Petitioner to 156 months' imprisonment with three years' supervised release on Counts 1, 3, 4, 6 and 8 to run concurrent with each other (CR DE# 146). It

also imposed a sentence of 84 months' imprisonment on Count 2 to run consecutive to Counts 1, 3, 4, 6 and 8 with five years' supervised release to run concurrent to the remaining counts of conviction (Id.). Therefore, Petitioner's total sentence imposed was 240 months' imprisonment with five years' supervised release. Petitioner did not file an appeal. The court issued an amended judgment to include restitution on **November 14, 2013.** (Cr DE# 146).

Petitioner did not file a direct appeal. Thus, the judgment became final on **Monday, December 2, 2013,**[1] when the 14-day period for prosecuting a direct appeal expired.[2]

Therefore, for purposes of the federal limitations period, the movant had one year from the time his conviction became final on **December 2, 2013,** or no later than **December 2, 2014,** within which to timely file this federal habeas petition. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); see also, See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d 1256,

---

[1] Day fourteen fell on Thanksgiving day, November 28, 2013, as a result, the Petitioner had until Monday to file a notice of appeal.

[2] Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999); Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011). On December 1, 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. See Fed.R.App.P. 26(a)(1). The movant was sentenced before the effective date of the amendment, thus he had **ten** days, **excluding** Saturdays and Sundays, within which to file his notice of appeal. See Fed.R.App.P. 26(a)(1)(B).

5

1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir. 2000)).

The movant waited approximately **two years and seven months** from the time his conviction became final on **December 2, 2013** until he returned to this court, filing the instant motion on **June 15, 2016**.[3] (Cv-DE#1:13). This court issued an order appointing counsel and setting a briefing schedule. (Cv-DE# 6). The parties have complied with the court's briefing schedule and the case is now ripe for review. (Cv DE# 1, 4, 8, 9, 12).

## IV. Threshold Issues

### A. Timeliness

As narrated previously, the movant's judgment of conviction became final on **December 2, 2013**. The movant had until **December 2, 2014,** to timely file his §2255 motion. Movant failed to timely file the instant petition, which he did not file until **June 15, 2016.**

However, on **June 26, 2015,** the United States Supreme Court held that the ACCA's residual clause--defining a violent felony as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another"--is unconstitutionally vague. Samuel Johnson v. United States, ___ U.S.

---

[3]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1) ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

___, 135 S.Ct. 2551, 2563 (2015). The Supreme Court, however, expressly did not invalidate the ACCA's elements clause or the enumerated crimes clause. Id. ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony"). Then, on **April 18, 2016,** the Supreme Court announced that Samuel Johnson announced a new substantive rule of constitutional law that is retroactively applicable to cases on collateral review. Welch v. United States, ___ U.S. ___, 136 S.Ct. 1257 (2016).

Petitioner takes the position that the Petition is timely as it was filed within one year of the Supreme Court's issuance of Samuel Johnson on June 26, 2015. In order to determine whether the petition is timely, this court must determine whether Samuel Johnson applies to Petitioner's conviction for possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §924(c).

## B. Procedural Bar

The government contends that, even if Samuel Johnson applies to 18 U.S.C. §924(c)(3)(B), Petitioner is procedurally barred from raising this argument because he is raising it for the first time in the instant proceedings. (CV DE# 11:4-8). According to the government, Petitioner cannot satisfy either the cause-and-prejudice or the actual innocence exceptions to the procedural-default rule. (Id.).

As a general matter, a criminal defendant must assert an available challenge to a conviction or sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding; Greene v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989). It is well-settled that a habeas petitioner can avoid the application

7

of the procedural default rule by establishing objective cause for failing to properly raise the claim and actual prejudice resulting from the alleged constitutional violation. Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)(citations omitted); Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). Cause for not raising a claim can be shown when a claim "is so novel that its legal basis [wa]s not reasonably available to counsel." Bousley v. United States, 523 U.S. 614, 622 (1998). To show prejudice, a petitioner must show actual prejudice resulting from the alleged constitutional violation. United States v. Frady, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); Wainwright v. Sykes, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977).

Under exceptional circumstances, a prisoner may obtain federal habeas review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 495-96; see also Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993); Kuhlmann v. Wilson, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). The actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not just legal innocence. Id. at 496; see also Bousley, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency"); Sawyer v. Whitley, 505 U.S. 333, 339 (1992)("the miscarriage of justice exception is concerned with actual as compared to legal innocence").

8

Where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, "[b]y definition" a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal. Reed v. Ross, 468 U.S. 1, 17 (1984). That is precisely the circumstance here. Samuel Johnson overruled precedent, announced a new rule, and the Supreme Court gave retroactive application to that new rule. However, no actual prejudice would result from finding a procedural default here because, as set forth below, regardless of whether Samuel Johnson applies to §924(c)'s residual clause, Petitioner's companion charge for **substantive Hobbs Act robbery** categorically qualifies as a "crime of violence" under §924(c)'s elements clause. Accordingly, Movant cannot establish cause-and-prejudice to overcome the procedural bar.

### V. Discussion

Because, this Court's conclusion that Movant's claims are procedurally barred turns on whether Movant's companion charge for substantive Hobbs Act Robbery still categorically qualifies as a "crime of violence" after Samuel Johnson, the Court must address this issue. However, since the Court concludes that it does, the Court need not address the unsettled question of whether Samuel Johnson invalidates §924(c)'s residual clause. See United States v. Mottaz, 476 U.S. 834, 848, n.11, 106 S. Ct. 2224, 2233, 90 L. Ed. 2d 841 (1986)("In light of our conclusion that the District Court's jurisdiction . . . rested on §1346(f) . . . , we need not reach the difficult and unsettled question of how an appeal raising both issues committed to the Federal Circuit's jurisdiction and issues outside its jurisdiction is to be treated."); see also Spector Motor Co. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply

9

rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

Title 18 U.S.C. §924(c)(1)(A) provides for enhanced statutory penalties in cases where, among other things, the defendant uses or carries a firearm during and in relation to any "crime of violence or drug trafficking crime." The statute further defines "crime of violence" as any felony that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. §924(c)(3). As such, §924(c)(3) contains a "residual clause," very similar to the residual clause declared unconstitutionally vague in Samuel Johnson.[4]

In the context of the ACCA's definition of "violent felony," the phrase "physical force" in paragraph (i) "means *violent* force-- that is, force capable of causing physical pain or injury to another person." Samuel Johnson, 559 U.S. 133, 140 (2010). As the Supreme Court has noted, the term "violent felony" has been defined as "a crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a deadly weapon, [and] calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." Id. (internal quotations and citations omitted); see also Leocal v.

---

[4]The ACCA's residual clause that was held to be unconstitutionally vague in Samuel Johnson defines "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii).

10

Ashcroft, 543 U.S. 1, 11, 125 S. Ct. 377, 383, 160 L. Ed. 2d 271 (2004) (stating that the statutory definition of "crime of violence" in 18 U.S.C. §16, which is very similar to §924(e)(2)(B)(i) in that it includes any felony offense which has as an element the use of physical force against the person of another, "suggests a category of violent, active crimes . . .").

In addition, the Supreme Court has stated that the term "use" in the similarly-worded elements clause in 18 U.S.C. §16(a) requires "active employment;" the phrase "use . . . of physical force" in a crime of violence definition "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Leocal, 543 U.S. at 9-10; see also United States v. Palomino Garcia, 606 F.3d 1317, 1334-1336 (11th Cir. 2010) (because Arizona "aggravated assault" need not be committed intentionally, and could be committed recklessly, it did not "have as an element the use of physical force;") (citing Leocal, supra). While the meaning of "physical force" is a question of federal law, federal courts are bound by state courts' interpretation of state law, including their determinations of the statutory elements of state crimes. Samuel Johnson, 599 U.S. at 138. A federal court which applies state law is bound to adhere to the decisions of the state's intermediate appellate courts, absent some persuasive indication that the state's highest court would decide the issue otherwise. See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983).

To determine whether a past conviction is for a "violent felony" under the ACCA, and thus whether a conviction qualifies as a "crime of violence" for purposes of §924(c), assuming Samuel Johnson extends to §924(c), courts use what has become known as the "categorical approach." Descamps v. United States, 133 S. Ct. 2276, 2281, 186 L. Ed. 2d 438 (2013); see also United States v.

11

Estrella, 758 F.3d 1239 (11th Cir. 2014). To determine if an offense "categorically" qualifies as a "crime of violence" under the "elements" or "use-of-force" clause in §924(c)(3)(A), the court would have to determine if substantive Hobbs Act robbery has an element of "force capable of causing physical pain or injury to another person" as contemplated by Samuel Johnson and its progeny. See Samuel Johnson, 559 U.S. at 140; Leocal, 543 U.S. at 11.

The Supreme Court has also approved a variant of the categorical approach, labeled the "modified categorical approach," for use when a prior conviction is for violating a so-called "divisible statute." Id. That kind of statute sets out one or more elements of the offense in the alternative. Id. If one alternative matches an element in the generic offense, but another does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, known as Shepard documents,[5] to determine which alternative formed the basis of the defendant's prior conviction. Id. The modified categorical approach then permits the court to "do what the categorical approach demands: [analyze] the elements of the crime of conviction." Id.

The modified categorical approach does not apply, however, when the crime of which the defendant was convicted has a single, indivisible set of elements. Id. at 2282. When a defendant was convicted of a so-called "'indivisible statute' –i.e., one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense," that conviction cannot serve as a qualifying offense. Id. at 2281-82.

---

[5]In Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Supreme Court held that a sentencing court could examine only a limited category of documents in determining whether a prior guilty plea constituted a "burglary," and thus a "violent felony," under the Armed Career Criminal Act ("ACCA"). See id. at 16, 125 S.Ct. 1254.

12

In sum, when determining whether a conviction qualifies as a predicate offense, the courts can only look to the elements of the statute of the conviction, whether assisted by Shepard documents or not, and not to the facts underlying the defendant's prior conviction. See Descamps, 133 S.Ct. 2283-85. In so doing, courts "must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized." Moncrieffe v. Holder, ___ U.S. ___, 133 S.Ct. 1678, 1684 (2011)(quoting Samuel Johnson, 559 U.S. at 137).

Finally, in Mathis v. United States, — U.S. —, 136 S. Ct. 2243 (2016), the Court was most recently called upon to determine whether federal courts may use the modified categorical approach to determine if a conviction qualifies when a defendant is convicted under an indivisible statute that lists multiple, alternative means of satisfying one (or more) of its elements. 136 S. Ct. at 2247-48. The Court declined to find any such exception and, in so doing, addressed how federal courts are to make the threshold determination of whether an alternatively-phrased statute sets forth alternative elements (in which case the statute would be divisible and the modified categorical approach would apply to determine which version of the statute the defendant was convicted of violating), or merely lists alternative means of satisfying one element of an indivisible statute (in which case the categorical approach would apply). Id. at 2256-57.

Here, the Court need not conduct the above analysis to determine whether, as a threshold matter, the substantive Hobbs Act statute that Movant was alleged to have violated is divisible or indivisible. Similarly, the Court need not conduct the above analysis, regardless of whether it may employ a modified categorical approach or is limited to the categorical approach, to determine whether Movant's companion charges for substantive Hobbs

13

Act Robbery still qualify as a "crimes of violence" for purposes of §924(c) after Samuel Johnson. That is because the Eleventh Circuit has resolved this issue. Specifically, in In re Saint Fleur, 824 F.3d 1337 (11th Cir. 2016), in the context of an application for leave to file a second or successive motion under §2255, the Court considered whether Samuel Johnson impacts a robbery charge under the Hobbs Act, 18 U.S.C. §1951(a), and a separate firearm charge during and in relation to a "crime of violence" in violation of §924(c). The Eleventh Circuit denied the application, stating:

> But we need not decide, nor remand to the district court, the §924(c)(3)(B) residual clause issue in this particular case because even if Johnson's rule about the ACCA residual clause applies to the §924(c)(3)(B) residual clause, [defendant's] claim does not meet the statutory criteria for granting this § 2255(h) application. This is because [defendant's] companion conviction for Hobbs Act robbery, which was charged in the same indictment as the §924(c) count, clearly qualifies as a "crime of violence" under the use-of-force clause in §924(c)(3)(A).

824 F.3d at 1340.

It is axiomatic that federal district courts are bound by the precedent of their circuit. See In re Hubbard, 803 F.3d 1298, 1309 (11th Cir. 2015)(citing Generali v. D'Amico, 766 F.2d 485, 489 (11th Cir.1985)). Courts are, however, generally only bound by the holdings of cases. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S. Ct. 1114, 1129, 134 L. Ed. 2d 252 (1996). Dicta, conversely, is "not binding on anyone for any purpose." Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir.2010). As the Eleventh Circuit has noted, "dicta is defined as those portions of an opinion that are 'not necessary to deciding the case then before us.'" United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (citations omitted). The holding of a case, on the other hand, is "comprised both of the result of the case and

14

'those portions of the opinion necessary to that result by which we are bound.'" Id. Finally, under the prior panel precedent rule, the holding of a prior panel of the Eleventh Circuit is binding on all subsequent panels, unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by the Eleventh Circuit sitting en banc. United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008)(citations omitted).[6]

Here, regardless of whether the Eleventh Circuit in Saint Fleur should have undertaken a determination of whether Saint Fleur's Hobbs Act conviction qualified as a "crime of violence," the fact remains that it did. Moreover, the Court's conclusion that Saint Fleur's Hobbs Act conviction did qualify as a "crime of violence" was necessary to the result in that case, since his application for leave to file a second or successive §2255 motion was denied on that basis. As such, Saint Fleur holds that Hobbs Act robbery is a "crime of violence" for purposes of §924(c), see Kaley, 579 F.3d at 1253 n.10 (the holding of a case is comprised both of the result of the case and those portions of the opinion necessary to that result), and this Court is thus bound by it. In re Hubbard, 803 F.3d at 1309 (federal district courts in the are bound by the precedent of their circuit).

Because Petitioner's companion charge for substantive Hobbs Act robbery categorically qualifies as a "crime of violence" under §924(c)'s elements clause, his petition is not timely and is procedurally barred.

## VI. Certificate of Appealability

---

[6]"While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." Garrett v. University of Alabama at Birmingham Bd. of Trustees, 344 F.3d 1288, 1292 (11th Cir.2003).

15

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." See Rule 11(a), Rules Governing §2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." See Fed.R.App.P. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. See 28 U.S.C. §2255-Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001).

After review of the record in this case, the Court finds the movant has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable. See Slack, 529 U.S. at 485; Edwards v. United States, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of

16

appealability is not warranted and should be denied in this case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the Chief Judge in objections.

### VII. Conclusion

Based on the foregoing, it is recommended that this motion to vacate be DENIED, that no certificate of appealability issue, and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 22nd day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Gregory Richardson
    Reg. No. 72478-004
    Edgefield
    Federal Correctional Institution
    Inmate Mail/Parcels
    Post Office Box 725
    Edgefield, SC 29824

    Aimee Allegra Ferrer
    Federal Public Defender's Office
    150 W Flagler Street
    Suite 1700
    Miami, FL 33130-1555
    305-536-6900
    Fax: 305-530-7120
    Email: aimee_ferrer@fd.org

    Mark Dispoto
    United States Attorney's Office
    500 E Broward Boulevard
    7th Floor
    Fort Lauderdale, FL 33301-3002
    561-820-8711

```
Fax: 561-820-8777
Email: mark.dispoto@usdoj.gov
```